UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KADINGER MARINE SERVICE, INC.,

    Plaintiff,

    v.                                      Case No. 04-C-0686

UTEC CONSTRUCTORS CORP.,

    Defendant.

## DECISION AND ORDER FOR JUDGMENT

On March 6, 2006, a trial to the court was conducted in this action. Two witnesses testified: on behalf of the plaintiff, David J. Kadinger, Sr. ("Mr. Kadinger"), and on behalf of the defendant, Matthew Reardon ("Mr. Reardon"). The parties were thereafter afforded an opportunity to submit written memoranda in support of their respective positions on the plaintiff's claim and the defendant's counterclaim. Having now considered the testimony, the exhibits and the submissions of the parties, the court issues the following decision in this action. This decision shall constitute the court's findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states, Kadinger Marine Service, Inc. ("Kadinger") being a citizen of Wisconsin and UTEC Constructors Corp. ("UTEC") being a citizen of Massachusetts.

On or about May 15, 2001, Kadinger and UTEC entered into an agreement under which

1

Kadinger was to provide certain services to UTEC involving excavation for the purpose of allowing transmission lines to be laid beneath the Menomonee Canal in the City of Milwaukee. This project was part of a larger project commissioned by the entity now known as WE Energies, on which UTEC was the general contractor. Kadinger presented a written proposal to UTEC (dated February 5, 2001), which written proposal was received into evidence as Plaintiff's Exhibit #1. The written proposal was accepted by UTEC on or about May 15, 2001.

The proposal reads as follows:

Kadinger Marine Service, Inc. purposes [sic] to furnish supervision, labor equipment and material to place 2 or three 8 inch HPFF UGT lines across the North Menomonee Canal.

Purposed [sic] work:

A.) Remove steel sheet piling and tie rods on North & South side bulkheads as necessary.
B.) Drive 100 lin. Feet of 50 foot long sheeting on *both* North and South side of Menomonee River (Total footage 200 lin. feet)
C.) Drive 172 lin. Feet of steel sheeting on both North and South landside of the Menomonee River.
D.) Excavate to grade, 86 feet of trench on land. (43 feet North & 43 feet South)
E.) Excavate trench in river 15 feet wide, 10 feet deep and 138 feet long.
F.) Assistant [sic] general contractor with floating equipment to place piping.
G.) Backfill around pipe with sand, and complete backfilling of trench with 3/4 inch stone.
H.) Extract sheeting from river.
I.) Rebuild 2 (two) existing dock walls.
J.) Backfill North and South landside trench.
K.) Remove sheeting from landside or leave in place.
L.) Dispose of extracted river material to US Army core [sic] of Engineers disposal site.
M.) Clean up construction site.

*For lump Sum prices:*
*$276, 232.00 (price for 2 lines)*
*$298,312.00 (price for 3 lines)*

2

(Pl's Ex. 1 (emphasis in original).)

Two lines were installed. Thus, the base contract was for the sum of $276,232.00. As of August 4, 2004, the amount that had been paid by UTEC on the contract was $248,608.80, leaving the 10% retainage of $27,623.20. However, the plaintiff claims that it was required to perform work in addition to that which was covered by the contract. The total amount which it claims to be owed is in excess of $90,000.00. This amount consists of: (1) $34,473.75 still due and owing on Invoice #48, dated October 1, 2002 (Defendant's Exhibit 112; the invoice was originally in the amount of $92,833.12, but on November 11, 2002, We Energies issued a joint-party check to Kadinger and UTEC in the amount of $58, 359.37, leaving $34, 473.75 owing); (2) $33,706.32 for the cost of thermal sand used to backfill the trench in the river; and (3) the 10% contract retainage in the amount of $27,623.20.

During the course of the project, at no fault of its own, it became necessary for Kadinger to complete some extra work. The extra work is the subject of invoice # 48. There is no dispute that Kadinger received a check in the amount of $58,359.37. UTEC claims that the parties, including Kadinger, agreed to accept this amount from WE Energies to compensate Kadinger for the extra work that was needed to be done by Kadinger. Kadinger denies that it agreed to accept this amount in full satisfaction of Invoice #48. However, I am persuaded by the testimony of Mr. Reardon that Kadinger did agree to accept this lesser amount. Regardless, Mr. Kadinger offered no evidence regarding precisely what work was performed by Kadinger which would entitle it to receive an additional $34,473.75. Indeed, the only evidence offered by the plaintiff to establish that it was owed more than $58,359.37 is invoice #48, which offers no explanation, but simply states that $92,833.12 is owing. Consequently, Kadinger is not entitled

3

to the $34,473.75 which it claims to still be owed under Invoice #48.

There is no dispute that WE Energies issued a joint-party check, dated January 21, 2003, in the amount of $33,706.32, and made out to both UTEC and Kadinger. Mr. Reardon testified that the check was to cover the cost of Kadinger's having to use thermal sand when backfilling the river trench rather than less expensive sand. Mr. Reardon testified that he specifically recalled executing that check and forwarding it to Kadinger. Mr. Kadinger testified that he did not know if Kadinger received it. Indeed, he testified that he could not say that Kadinger did not receive it. Simply stated, in the face of such testimony, I am persuaded that the check was indeed sent to, and received by, Kadinger. Thus, Kadinger is not entitled to the $33,706.32 which it claims to still be owed to compensate it for the thermal sand. This then leaves for determination the amount of the retainage (if any) to which the plaintiff is entitled.

UTEC claims that the plaintiff did not complete the work it was required to perform under the contract. As a result, UTEC was required to expend $41,985.76 to finish the job. Thus, UTEC claims that, not only is Kadinger not entitled to the retainage of $27,623.20, but Kadinger owes UTEC the difference between the retainage amount and the amount which UTEC had to expend, to wit, $14,362.56.

The specific tasks or items for which UTEC incurred costs and for which it seeks payment from Kadinger are set forth in Defendant's Exhibit #119 and are as follows:

```
Set up assistance 3/06/02:      $8,962.02
Haul away dirt 3/22/02:         $195.44
Haul spoil from canal 7/02/02:  $19,075.84
Haul spoil from canal 7/02/02:  $1,470.48
Haul spoil from canal 7/02/02:  $3, 961.25
Leveling off sand 7/02/02:      $2,482.57
Repair seawall:                 $3,189.16
```

4

Replace Fence: $2,649.00
        Total: $41,985.76.

(Def.'s Ex. 119.)

Mr. Reardon was not able to testify precisely what the set up assistance was for. Indeed, he testified that he would have to speculate as to what that dollar amount represented. Thus, UTEC will not be awarded the sum associated with that particular claimed expense.

Mr. Reardon testified that the expense associated with hauling away of the dirt and the "spoil from canal" was necessitated by the discovery of some contamination in the soil. Because Kadinger was not licensed to haul away contaminated soil, UTEC had to engage another entity to do so. Nevertheless, according to Mr. Reardon, the contract required that Kadinger not backfill the landside trench with the old soil. In other words, according to Mr. Reardon, Kadinger would have in any event incurred this expense in hauling away the soil. Thus, Mr. Reardon deducted it from the retainage.

By contrast, Mr. Kadinger testified that the contract did not prohibit Kadinger from using the old soil to backfill the landside trench. And indeed it was Kadinger's intention to do so. It was only prohibited from doing so by the discovery of contaminated soil (which was not its fault). Accordingly, Kadinger claims that it should not have the contract amount (the retainage) reduced by UTEC's cost of having to hire a licensed entity to haul away the contaminated soil.

The contract itself (Pl.'s Ex. 1) does not expressly state that Kadinger could not use the old soil to backfill the landside trench. Indeed, the contract would suggest otherwise. More precisely, the contract expressly calls for the excavation of a trench in the river, and for the

5

disposal of the "extracted river material to US Army core [sic] of Engineers disposal site." The contract does not speak at all to the disposal of the soil extracted from the landside trench. Moreover, at letter G., the contract specifies that sand and 3/4 inch stone are to be used to backfill the "trench." We know that letter G. refers to the river trench because the parties testified that a layer of stone was necessary in the river so that currents would not wash the sand away. However, at letter J., the contract specifically refers to the "North and South landside trench[es]," but merely states that the trenches should be backfilled, without specifying a material. Mr. Reardon testified that the contract documents and specifications call for a "clean trench," meaning new backfill. However, no such documents were produced at trial, nor was it shown that Kadinger ever received such documents, and if it did, it was not shown when it received them.

Thus, I am not persuaded that UTEC is justified in retaining the cost it incurred in having the contaminated soil hailed away. Simply stated, there is nothing in the contract which would have prevented Kadinger from using the old soil (had it not been contaminated) to backfill the landside trench. Accordingly, because Kadinger would not have had to incur the cost of hauling away the old soil under the contract, it should not have the amount it is owed under the contract reduced by UTEC's cost of having the contaminated soil hauled away.

Mr. Reardon further testified that it was necessary to add more fill and sand to the project to bring it back to final grade and that it was necessary to grade the soil which was hauled by Kadinger to the Army Corps of Engineers site. Kadinger does not dispute that it was obligated under the contract to bring the project site up to the proper rough grade. Moreover, the testimony establishes that when a contractor hauls materials to the Army Corps of Engineers

6

Case 2:04-cv-00686-WEC    Filed 03/17/06    Page 6 of 9    Document 34

site, it is required to grade the materials that it dumps there. I am persuaded by the testimony at trial that neither of these tasks were properly completed by Kadinger. UTEC was therefore justified in deducting the amounts expended to complete these tasks from Kadinger's retainage.

UTEC also claims to have incurred expenses because Kadinger did not rebuild/repair a seawall that it had to destroy in order to dig the trench. The testimony on this issue is divergent. Mr. Reardon testified that behind the steel sheeting driven into the river bank there was a concrete abutment with an apron. Mr. Reardon testified that it was necessary for Kadinger to tear that structure up in order to properly dig the trench, but that under the contract Kadinger was required to replace or repair the structure to the way it originally was. Moreover, Mr. Reardon testified that he asked Mr. Kadinger several times to repair the structure. Mr. Kadinger testified that behind the metal sheeting there were "jersey barriers," which according to his testimony are concrete barriers that can be moved and are not permanently positioned. Mr. Kadinger testified that he moved those barriers in order to dig the trench, but did not replace them because UTEC wanted to make them into a more solid structure and needed to complete some additional work in order to do so.

Based on the testimony, I am persuaded that Kadinger did not fully perform its obligations with regard to the "seawall," or concrete structure. Mr. Kadinger acknowledged that he did not replace the concrete barriers that he removed in order to dig the trench, but instead left them off to the side. The contract, at letter I., calls for Kadinger to "[r]ebuild 2 (two) existing dock walls." Mr. Reardon testified that this refers to rebuilding or repairing seawalls. Based on this, I am persuaded that UTEC is justified in withholding the $3,189.16 that it spent to have the seawall repaired from Kadinger's retainage.

7

UTEC claims that Kadinger failed to properly repair/replace and secure the fence which was adjacent to the work area. In order to dig the trench, Kadinger had to take down a section of fence. Mr. Kadinger testified that this included pulling up fence posts along with the concrete they were set in. Mr. Kadinger testified that he put the fence back at the completion of the project. Mr. Reardon testified, on the other hand, that the fence was not put back in its original condition, but was just rolled back. This required UTEC to employ someone else to properly secure the fence. The parties do not dispute, as a general matter, that Kadinger was required to replace the fence. Based on the testimony, I am persuaded that the fence was not put back in a satisfactory manner. UTEC was therefore entitled to withhold the $2,649 which it spent to have the fence repaired or replaced.

In sum, UTEC is entitled to reduce the retainage by only the following amounts: $2,482.57 (grading at the project site and the Army Corps of Engineers site); $3,189.16 (repairing of seawall); and $2,649.00 (replacing of fence), for a total of $8,320.73. The net result of the foregoing is that Kadinger is entitled to receive from UTEC the total sum of $19,302.47 (the $27,623.20 retainage minus $8,320.72).

**NOW THEREFORE IT IS ORDERED** that judgment shall be entered in favor of plaintiff Kadinger Marines Services, Inc. and against defendant UTEC Constructors Corp. in the amount of $19,302.47;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the clerk of court shall enter judgment accordingly.

**SO ORDERED** this 17th day of March 2006, at Milwaukee, Wisconsin.

                                                  /s/ William E. Callahan, Jr.
                                                  WILLIAM E. CALLAHAN, JR.
                                                  United States Magistrate Judge